**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| AARON FISCHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEXCEL CORPORATION, NICK L. STANAGE, JOEL S. BECKMAN, LYNN BRUBAKER, JEFFREY C. CAMPBELL, CYNTHIA M. EGNOTOVICH, THOMAS A. GENDRON, JEFFREY A. GRAVES, GUY C. HACHEY, CATHERINE A. SUEVER, GENESIS MERGER SUB, INC., and WOODWARD, INC.,<br><br>Defendants, | Civil Action No. ___________<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Aaron Fischman ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Hexcel Corporation ("Hexcel" or the "Company") against Hexcel's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9,

arising out of the Board's attempt to sell the Company to Woodward, Inc. through its wholly owned subsidiary Genesis Merger Sub, Inc. (collectively, "Woodward").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on February 28, 2020. The S-4 recommends that Hexcel stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Hexcel is acquired by Woodward. The Proposed Transaction was first disclosed on January 12, 2020, when Hexcel and Woodward announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Hexcel stockholders will receive 0.625 shares of Woodward common stock for each share of Hexcel they hold (the "Merger Consideration"). The deal is expected to close in the third quarter of 2020.

3. The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Hexcel management, as well as the financial analyses conducted by Goldman Sachs & Co, LLC ("Goldman Sachs"), Hexcel's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Hexcel's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Hexcel's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Hexcel.

6. Defendant Hexcel is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at Two Stamford Plaza, 281 Tresser Boulevard, Stamford, Connecticut 06901-3238. Hexcel common stock trades on NYSE under the ticker symbol "HXL."

7. Defendant Nick L. Stanage has been President, CEO and a director of the Company since 2013. Stanage has served as Chairman of the Board since 2014. Stanage held positions at Honeywell Inc. and AlliedSignal from 1986 to 2005, including Vice President Integrated Supply Chain and Technology for the Consumer Products Group and Vice President and General Manager of the Aerospace Group's Engine Systems and Accessories Division. Held executive positions at Dana Holding Corporation from 2005 until 2009. Serves on board of TriMas Corporation.

8. Defendant Joel S. Beckman has been a director of the Company since 2003. Beckman is a retired Managing Partner of Greenbriar Equity Group LLC, which he founded in 2000. Hexcel was a portfolio company of Greenbriar Equity Group.

9. Defendant Lynn Brubaker has been a director of the Company since 2005. Brubaker retired from Honeywell International Inc in 2005, where she had served as Vice President/General Manager—Commercial Aerospace. She had been at AlliedSignal Inc. from 1996 until AlliedSignal acquired Honeywell in 1999. Sits on boards for FARO Technologies, Inc. (since 2009), QinetiQ Group plc and a private aerospace company. Brubaker formerly sat on the board of Graham Partners, a private equity firm that counted TriMas in its portfolio until 2013.

10. Defendant Jeffrey C. Campbell has been a director of the Company since 2003.

11. Defendant Cynthia M. Egnotovich has been a director of the Company since 2015.

12. Defendant Thomas A. Gendron has been a director of the Company since 2010. Gendron has served as President and CEO of Woodward, Inc. since 2005.

13. Defendant Jeffrey A. Graves has been a director of the Company since 2007. Graves is CEO, President and a director of MTS Systems Corporation. Sits on the board of FARO Technologies, Inc. since 2017.

14. Defendant Guy C. Hachey has been a director of the Company since 2014.

15. Defendant Catherine A. Suever has been a director of the Company since 2018. Suever serves as Executive Vice President—Finance and Administration and Chief Financial Officer of Parker Hannifin Corporation, which is a competitor of Woodward, Inc.

16. Defendants Stanage, Beckman, Brubaker, Campbell, Egnotovich, Gendron, Graves, Hachey and Suever are collectively referred to herein as the "Board" or "Individual Defendants."

17. Defendant Woodward, Inc. is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1081 Woodward Way, Fort Collins, Colorado 80524. Woodward, Inc. common stock trades on NASDAQ under the ticker symbol "WWD."

18. Defendant Genesis Merger Sub, Inc. is a Delaware corporation and wholly owned subsidiary of Woodward, Inc.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Hexcel is incorporated in this District.

**CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Hexcel common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

23. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of January 10, 2020, Hexcel had approximately 83.3 million shares outstanding.

(b) Questions of law and fact are common to the Class, including, inter alia, the following:

(i) Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii) Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v) whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

24. Hexcel was founded in 1946. The Company manufactures and sells structural materials for use in aircraft, spacecraft, satellites, and automotive products. Net sales: $2.35 billion 2019, $2.18 billion 2018, $1.97 billion in 2017. Net income $306.6 million 2019, $276.6 million 2018, $284 million 2017.

25. In September 2019, while at a dinner attended by current and former officers and directors of Hexcel, Defendant Stanage pitched a combination of Woodward and Hexcel to Defendant Gendron. A few days later, Defendants Gendron and Stanage began discussing a combination of Woodward and Hexcel, including the roles each would play in a combined company. It was not until October 6, 2019, after two weeks of discussions, that Defendant Stanage informed Defendant Campbell, Hexcel's Lead Independent Director.

26. In October and November 2019, the discussions gained steam. On October 21, 2019, Woodward and Hexcel executed a confidentiality agreement. Between November 9, 2019 and November 11, 2019, members of senior management of each company met to discuss a combination and synergies; Goldman Sachs participated in some of the meetings before they were even retained. One week later Defendant Stanage updated Defendant Campbell on discussions with Woodward and Defendant Gendron.

27. Finally, on November 18, 2019, two full months after Defendant Stanage approached Defendant Gendron, the Board met. Defendant Stanage described the discussions up to that date, and informed the Board that Defendant Gendron would not participate in the meeting.

Defendant Suever also did not participate in the meeting, given her role as an executive officer at a company that competes with Woodward. The Board supported further discussions with Woodward. No discussion took place of creating an independent committee to manage a sales process, or even of a sales process. Instead, the Board (without two members) just let Defendant Stanage continue to run the process.

28. About two weeks later, the Board met again. After presentations on the Proposed Transaction by Hexcel officers and Goldman Sachs, the Board decided that Defendants Gendron and Suever would not be present at future meetings. Yet again, the Board failed to discuss creating an independent committee or a sales process.

29. Hexcel and Woodward continued discussions throughout December 2019. Drafts of the Merger Agreement were exchanged. Due diligence was conducted, and forecasts exchanged. Defendant Gendron presented to the Board on December 19, 2019 on Woodward's business, strategic direction and growth plans. The Board met again on December 30, 2019 and received an update on discussions. Despite meeting twice in second half of December, the Board again did not discuss creating an independent committee or conducting a sales process.

30. Finally, the parties discussed the Merger Consideration. On January 5, 2020 and January 6, 2020, members of management for both companies met and agreed on an exchange ratio of 0.630. At those same meetings, the people there negotiated the leadership and board composition of the combined company. A few days later, Woodward proposed to Defendant Stanage that the exchange ratio be lowered to 0.6159 to eliminate a premium for Hexcel's shares. Defendant Stanage rejected that exchange ratio immediately. The next day, on January 11, 2020, Woodward proposed an exchange ratio of 0.6250. Defendant Stanage received that proposed exchange ratio during a Board meeting, and he informed the Board of that proposal. The Board

meeting on January 11, 2020 was the first meeting of the Board after officers of Woodward and Hexcel negotiated the Merger Consideration. The meeting was adjourned so that Goldman Sachs could update their financial analyses. That evening, the Board received the updated financial analysis and approved the Proposed Transaction. At no point in that meeting did the Board discuss an auction process, or creating an independent committee to lead the sales process. The Board never discussed strategic alternatives to the Proposed Transaction.

31. On January 12, 2020, the Company entered into the Merger Agreement with Woodward.

**B. Hexcel's Officers Stand to Receive Benefits Unavailable to the Class**

32. The S-4 acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest. Specifically, Defendant Stanage is expected to be the CEO of the combined company after the Proposed Transaction closes. That role was considered when discussions began between Hexcel and Woodward, and Defendant Stanage was involved in some of those discussions. The S-4 fails to disclose what the Board knew about these discussions, its involvement in the discussions, and Defendant Stanage's role in the discussions. Defendant Stanage's continued employment after the Proposed Transaction closes provided him with an incentive to ensure that the Board approved the Proposed Transaction and did not consider other alternatives.

**C. The Preclusive Deal Protection Devices**

33. As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

34. By way of example, section 6.13(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of any

inquiries or proposals concerning an acquisition proposal. Section 6.13(a) further demands that the Company cease and terminate all activities, discussions or negotiations with any party concerning an acquisition proposal.

35. Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Woodward. For example, pursuant to section 6.13(b) of the Merger Agreement, the Company must notify Woodward of any offer, indication of interest, or request for information made by an unsolicited bidder. That includes the identity of any party making a proposal and the material terms of that proposal. Thereafter, should the Board determine that the unsolicited offer is superior, section 6.3(b) requires that the Board grant Woodward five (5) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. In other words, the Merger Agreement gives Woodward access to any rival bidder's information and allows Woodward a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Hexcel, because the Merger Agreement unfairly assures that any "auction" will favor Woodward and allow Woodward to piggy-back upon the due diligence of the foreclosed second bidder.

36. In addition, pursuant to section 8.2(c) of the Merger Agreement, Hexcel must pay Woodward a termination fee of $250 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

37. Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond

to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Woodward's inadequate offer price.

**D. The Materially Incomplete and Misleading S-4**

38. The Individual Defendants must disclose all material information regarding the Proposed Transaction to Hexcel stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

39. On February 28, 2020, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Hexcel stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

40. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. For example, the S-4 indicates that Goldman Sachs utilized estimates of unlevered free cash flow for Hexcel for 2020 through 2024 "as reflected in the Hexcel prospective financial information," yet the projections disclosed in the S-4 do not include unlevered free cash flow projections or who prepared them. Similarly, the S-4 does not disclose the unlevered free cash flow projections for Woodward or who prepared them. The S-4 also excludes the definition of EBTIDA as used by both Hexcel and Woodward.

41. In addition, the S-4 indicates that in connection with the rendering of Goldman Sachs's fairness opinion, Goldman Sachs reviewed "the prospective financial information," but does not disclose what prospective financial information Goldman Sachs actually reviewed. Furthermore, the S-4 states that representatives of Woodward and Hexcel met on December 19, 2019 and reviewed each party's stand-alone long-range plans and growth forecasts. However, the S-4 does not disclose whether those plans and forecasts were the same as the ones used by Goldman Sachs for their analyses, or the same as the ones included in the S-4.

42. Full and accurate information is necessary for Hexcel stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs's Financial Analyses***

43. With respect to the *Illustrative Discounted Cash Flow Analysis—Hexcel Standalone*, the S-4 fails to disclose the terminal-year EBITDA, "permanent excess cash," the tax-effected pension underfunding and other post-employment benefits as provided to Goldman Sachs by Hexcel management, capitalized joint venture income as provided to Goldman Sachs by Hexcel management, the P/E multiple used by Goldman Sachs to capitalize the joint venture income, and the fully diluted outstanding shares of Hexcel as provided to Goldman Sachs by Hexcel management.

44. With respect to the *Illustrative Discounted Cash Flow Analysis—Woodward Standalone*, the S-4 fails to disclose the time period used by Goldman Sachs in the analysis. The S-4 states that utilized estimates for "the first 9 months of 2020 and for the full calendar years 2021 through 2024," but Woodward's fiscal year ends on September 30. The S-4 also fails to disclose if Goldman Sachs used the first nine months of fiscal year 2020 or the first nine months of calendar year 2020. Furthermore, the S-4 fails to disclose the terminal-year EBITDA, "permanent excess

cash," tax-effected pension underfunding and other post-employment benefits as provided to Goldman Sachs by Woodward management, and fully diluted outstanding shares of Hexcel as provided to Goldman by Woodward management. Finally, the S-4 fails to disclose whether the proceeds from the divestiture of Woodward's wind business will be retained by Woodward or distributed as a special dividend.

45. With respect to the *Illustrative Discounted Cash Flow Analysis—Pro Forma Combined Company*, the S-4 fails to disclose the estimated transaction costs of the pro forma combined company, as well as the fully diluted outstanding shares of the combined company as provided to Goldman Sachs by Hexcel's management.

46. With respect to the *Illustrative Present Value of Future Share Price Analysis—Hexcel Standalone*, the S-4 fails to disclose the projected dividends for Hexcel. Similarly, with respect to the *Illustrative Present Value of Future Share Price Analysis—Woodward Standalone*, the S-4 fails to disclose the projected dividends for Woodward.

47. Finally, Goldman Sachs excluded any reference to guideline public companies or precedent transactions in its analyses. The S-4 fails to disclose the basis for only using market data for Hexcel and Woodward.

***Materially Incomplete and Misleading Disclosures Concerning J.P. Morgan Securities LLC's Financial Analyses***

48. With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose whether the analysis of Woodward included adjustments were made as of the beginning of 2020 instead of the "year-end" cash and debt. Furthermore, the S-4 fails to disclose the definition and quantity of "excess" cash used to adjust the analysis for Hexcel, and the basis for adjusting the analysis for Woodward for cash.

49. The S-4 also fails to disclose any analysis of transactions that were deemed relevant

to J.P. Morgan Securities LLC's analyses, despite noting that those transactions were considered in its analyses.

***Materially Incomplete and Misleading Disclosures Concerning the Flawed Process***

50. The S-4 also fails to disclose material information concerning the sales process. For example, the S-4 states that Defendant Stanage approached Defendant Gendron about a potential combination. The S-4 does not disclose whether the Board was aware that Defendant Stanage would make such an overture or approved such an overture. This is crucial given that Defendants Stanage and Gendron discussed leadership of a combined company just days after Defendant Stanage first approached Defendant Gendron.

51. Defendant Stanage approached Defendant Gendron on September 18, 2019, at a dinner attended by current and former officers and directors of Hexcel. The S-4 does not disclose which of the current members of the Board attended that dinner and, if so, if they were part of the discussion of a potential combination of Woodward and Hexcel.

52. Defendant Stanage informed Defendant Campbell of his discussions with Defendant Gendron on October 6, 2019 and November 16 and 17, 2019. Yet the S-4 does not disclose whether Defendant Stanage informed Defendant Campbell of discussions on the leadership of a combined company. The S-4 also fails to disclose whether the Board was informed of the discussions before its meeting on November 20, 2019, and whether the Board was informed of the employment discussions at that November 20, 2019 meeting. The S-4 further fails to disclose when other employment discussions took place during the sales process, whether Defendant Stanage took part in those discussions, and whether the Board was informed of or approved such discussions.

53. The S-4 notes that at certain Board meetings, members of management presented to the Board on the Proposed Transaction. However, the S-4 does not disclose which members of management presented to the Board at the meetings on December 5, 2019, December 19, 2019, December 30, 2019, January 7, 2020 and January 11, 2020.

54. The S-4 also notes that Goldman Sachs presented financial analyses to the Board at various meetings, yet those analyses have not been disclosed. This includes the comparison of the financial positions and business profiles of both companies as presented at the December 5, 2019 Board meeting; the preliminary financial analysis provided to the Board on December 19, 2019; the preliminary financial analysis provide to the Board on December 30, 2019; the preliminary financial analysis provided to the Board on January 7, 2020; and the financial analysis provided to the Board on January 11, 2020.

55. On January 2, 2020, the Board discussed "combined company governance considerations." The S-4 notes that the corporate governance provisions of the Merger Agreement include the provision naming Defendant Stanage as CEO of the combined company. Yet the S-4 does not disclose whether the governance considerations discussed by the Board on January 2, 2020 included Defendant Stanage's role at the combined company.

56. The S-4 states that when evaluating the Proposed Transaction, the Board considered Woodward's financial condition relative to other potential strategic alternatives available to the Company. Yet the S-4 does not state what such alternatives were or when they were first evaluated by the Board.

57. Goldman Sachs noted that its Investment Banking Division had not been engaged by Hexcel or Woodward in the two years prior to January 10, 2020. The S-4 does not state whether

other Goldman Sachs divisions provided other services to Hexcel or Woodward, and whether any compensation was received for any such services.

58. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Hexcel stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

59. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

60. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

61. Further, the S-4 indicates that on January 11, 2020, Goldman Sachs reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated January 12, 2020, to the effect that the Merger Consideration was fair, from a financial point of view, to Hexcel stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Goldman Sachs's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

62. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

63. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64. Defendants have filed the S-4 with the SEC with the intention of soliciting Hexcel stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

65. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Hexcel, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

66. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

67. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Hexcel shares and the financial analyses performed by Goldman Sachs in support of its fairness opinion; and (iii) the sales process.

68. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Goldman Sachs reviewed and discussed its financial analyses with the Board during various meetings including on January 11, 2020, and further states that the Board relied upon Goldman Sachs's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

69. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

70. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

71. The Individual Defendants acted as controlling persons of Hexcel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Hexcel and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

74. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants

reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Hexcel stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 20, 2020

**O'KELLY & ERNST, LLC**

/s/ Ryan M. Ernst
Ryan M. Ernst (No. 4788)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
(302) 778-4000
rernst@oelegal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514